In re Clifton WILLIAMS, Jr., Debtor.

No. 06–10928BF.

United States Bankruptcy Court,
E.D. Pennsylvania.

June 21, 2006.

Clifton Williams Jr., Philadelphia, PA, pro se.

## MEMORANDUM

BRUCE FOX, Bankruptcy Judge.

The chapter 13 debtor, Clifton Williams, Jr. has filed a "motion for a stay," which has triggered two objections. As will be discussed, at bottom this contested matter involves differing interpretations propounded by the parties of new bankruptcy law provisions found in 11 U.S.C. § 362(c)(3). An evidentiary hearing was held, and the remaining interested parties have submitted post-hearing memoranda. This contested matter is now ripe for adjudication.

## I.

The following relevant facts were adduced at the hearing.

On March 6, 2006, the above-captioned debtor filed a voluntary petition in bankruptcy under chapter 13. The debtor had filed a prior chapter 13 case on September 26, 2005, docketed at Bankr.No. 05–33239. That earlier case had been dismissed on November 14, 2005, after notice, because of the debtor's failure to file all required documents, such as his chapter 13 plan, his bankruptcy schedules and his statement of financial affairs. The debtor blames his then-attorney for dismissal.

The second chapter 13 petition was filed *pro se*. On April 10, 2006, the debtor retained different counsel who entered his appearance. On April 11, 2006, the debtor (through his counsel) filed the instant motion, requesting "that a stay be imposed with respect to all [creditors] . . . in order that the Debtor has an opportunity to file and proceed to confirm a plan which will pay them all in full[.]" Motion, ¶ 8.

The evidence revealed that this debtor owns five real properties. Ex. D–1 (schedule A). One—located at 8557 Fayette Street, Philadelphia, Pennsylvania—is his residence, held as tenants by the entireties with his wife. Four other Philadelphia properties—located at 5425 North 11th Street; 110 West Champlost Street; 2735 Opal Street; and 4620 Oakmont Street— were purchased by him (beginning in 2002) for investment after those properties had been foreclosed upon by their lenders.

The debtor is employed as a mail handler for the United States Postal Service and has been so employed for many years. He purchased these four distressed properties intending to make money by renting and/or reselling them at a profit. For some of the properties, he made modest renovations after his purchase. For others, their condition remains the same.

The debtor purchased these investment properties with borrowed funds from different lenders, using the properties as collateral. The debtor offered differing reasons that these properties have not generated sufficient income to cover his mortgage payments.[1] However, it is clear that he has fallen behind in his mortgage payments on at least some, if not all, of these properties.

On his bankruptcy schedules, the debtor discloses that CitiMortgage Corp. holds a mortgage lien on the Champlost Street realty; National City Mortgage Co. holds a mortgage lien on the 11th Street property; Prime Funding Co. holds the mortgage on the Opal Street realty; and Washington Mutual Home Loans holds the mortgage on his Fayette Street residence. Ex. D–1 (schedule D). Both the Champlost Street and 11th Street properties had been scheduled for sheriff sales prior to the debtor's March 2006 bankruptcy filing. The latter property was sold at foreclosure after the debtor's bankruptcy filing, and National City has filed a motion to annul the bankruptcy stay, which motion is now pending.

The debtor has proposed a plan calling for him to pay $100 per month to the chapter 13 trustee "for 36 months or until the sales of property take place as described in paragraph 3 of this plan." Ex. D–1 (debtor's proposed plan). The plan further provides that the debtor will obtain an agreement of sale for the 11th Street property by November 30, 2006 for an amount not less than $85,000. The secured claim of National City Mortgage Co.

---

1. Insofar as the Oakmont property is concerned, the debtor offered an opaque explanation that this property is titled in his name but is actually owned by someone else. He seeks no relief from creditors as to this realty.

(estimated by the debtor in his schedules to be $45,000) will be repaid in full from the proceeds of sale, with the balance used to pay other creditors. *Id.*, ¶ 3. The plan may also provide that the debtor will obtain an agreement of sale on the Champlost Street property by November 30, 2006, in an amount not less than $90,000. *Id.*, ¶ 3.[2] Citi Mortgage Corp. (estimated by the debtor to hold a claim in the amount of $35,000) would be repaid in full from the proceeds of this sale. *Id.*, ¶ 3. Prime Funding Corp., which holds an estimated $13,000 mortgage on the Opal Street realty, will be repaid from the proceeds of sale from the other two properties. *Id.*, ¶ 4. The debtor "will also consider selling [the Opal Street property] if necessary." *Id.*, ¶ 4.

While the debtor's plan calls for the eventual sale of one or more of his properties—there is no deadline for the sale of any property, only a deadline for signing an agreement of sale—he testified that he had not engaged a real estate agent by the date of the hearing on this motion. Moreover, he had unsuccessfully sought to sell some of these properties on his own.

The debtor has offered no expert opinion as to the value of these properties. He paid $30,000 for the 11th Street realty in 2002, with repairs totaling $5,000; he asserts that the realty is now worth $90,000.

As to Champlost Street, he paid $30,000 for the realty in 2003 and, after $1,000 in repairs, opines that the realty is presently worth $110,000. Finally, he purchased the Opal Street realty in 2004 for about $12,000, and the debtor values it, without any improvements or repairs, at $50,000. Ex. D–1 (schedule A).

## II.

### A.

At the hearing on this contested matter, CitiMortgage, Inc., Prime Funding Corp. and National City Mortgage Co. all opposed any relief being afforded the debtor that would prevent them from immediately foreclosing upon their collateral. Thereafter, CitiMortgage entered into a settlement of its objection with the debtor, which settlement has been approved. Thus, only two objections remain.[3]

The position of these two objecting creditors is straightforward. They contend that 11 U.S.C. § 362(c)(3)(A) provides that whenever an individual files a bankruptcy case within one year from the dismissal of a prior case, the automatic stay in section 362(a) is imposed upon creditors only for thirty days from the date of the commencement of the second case. Within that thirty-day period, the debtor may request an extension of the stay for cause shown. When though, as here, the thirty-

---

2. The debtor's plan does not actually require the sale of Champlost Street. Paragraph 3 states in one sentence that he "anticipates" such a sale; and in another sentence proposes that his case "will be subject to dismissal" if no agreement of sale is signed *either* as to 11th Street or Champlost Street by "November 390[sic], 2006." *Id.*, ¶ 3.

3. To the extent the debtor's post-hearing memorandum seeks to prevail over these two objectors by default for their failure to file a written objection, I must disagree for a number of reasons. First, the evidentiary hearing was scheduled on an expedited basis and, by virtue of Local Bankr.R. 9014–3(i), no answer is required unless the court directs. Given the abbreviated time frame involved, I did not direct any written response. Second, Prime Funding did file an answer in opposition on April 20, 2006, just three days after the date fixed for service of the motion, and prior to the hearing. And third, the debtor has only raised the issue of default after the hearing on the merits, at which all parties in interest participated. Given the written answers that were filed prior to the hearing, the debtor should have been prepared to, and did proceed, on the merits.

day period ends without any request by the debtor for extension of the bankruptcy stay, then the automatic stay expires, creditors are free to exercise their non-bankruptcy law rights to foreclose upon their collateral, and the bankruptcy court has no power to grant the debtor any relief.

The debtor's contentions are dual and overlapping.

First, he maintains that section 362(c)(3)(A) only causes a portion of the bankruptcy stay to terminate after thirty days: the stay as to the debtor and property of the debtor. He argues that section 362(c)(3) does not affect the bankruptcy stay as to "property of the bankruptcy estate." The 11th Street and Opal Street properties are properties of the bankruptcy estate under 11 U.S.C. §§ 541(a) and 1306. *See, e.g., In re Colarusso,* 382 F.3d 51, 58 (1st Cir.2004); *In re Mongiove,* 9 B.R. 34, 35 (Bankr.S.D.Fla.1980). Accordingly, the debtor contends that even though the thirty-day period expired prior to the filing of his motion, the automatic stay continues to prevent these two secured creditors from foreclosing upon their collateral.

Alternatively and additionally, to the extent that the bankruptcy stay expired after thirty days, the debtor maintains that, under these circumstances and emphasizing the debtor's original *pro se* status and his proposed chapter 13 plan, this court has the power under 11 U.S.C. § 105(a) to reimpose a stay as to all creditors and should do so.

As all parties agree that the provisions of section 362(c)(3) apply in this dispute, since the debtor's 2005 case was dismissed within one year of his filing the instant chapter 13 petition, I shall first address the scope of this new statute.

## B.

The Supreme Court has repeatedly instructed that statutory interpretation of bankruptcy legislation begins with the language of the statute itself. "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Hartford Underwriters Insurance Co. v. Union Planters Bank, N. A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000); *see, e.g., Lamie v. U.S. Trustee,* 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004); *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *In re Price,* 370 F.3d 362, 368 (3d Cir.2004). Only if the statute is ambiguous or unclear should a court consider legislative history for interpretive guidance. *Ross v. Hotel Employees and Restaurant Employees International Union,* 266 F.3d 236, 245 (3d Cir.2001); *see also Garcia v. United States,* 469 U.S. 70, 75, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984).

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, enacted on April 20, 2005 and effective on October 17, 2005, Pub.L. 109–8, added 11 U.S.C. § 362(c)(3) to the Bankruptcy Code. This statute states:

(c) Except as provided in subsections (d), (e), (f), and (h) of this section—

\* \* \*

(3) if a single or joint case is filed by or against debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1–year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)——

*(A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case;*

(B) on the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors (subject to such conditions or limitations as the court may then impose) after notice and a hearing completed before the expiration of the 30–day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed; and

(C) for purposes of subparagraph (B), a case is presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary)——

(i) as to all creditors, if——

(I) more than 1 previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was pending within the preceding 1–year period;

(II) a previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was dismissed within such 1–year period, after the debtor failed to——

(aa) file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney);

(bb) provide adequate protection as ordered by the court; or

(cc) perform the terms of a plan confirmed by the court; or

(III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will be concluded——

(aa) if a case under chapter 7, with a discharge; or

(bb) if a case under chapter 11 or 13, with a confirmed plan that will be fully performed; and

(ii) as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, that action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to actions of such creditor[.]

(emphasis added).

The "subsection (a)" referred to in section 362(c)(3)(A) is section 362(a). Subsection (a) sets forth the range of the automatic stay.[4] Subsection (b) identifies

---

4. That subsection provides:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
(2) the enforcement, against the debtor or against property of the estate, of a judgment

exceptions to the reach of subsection (a). Subsection (c) lists the circumstances in which the bankruptcy stay either terminates or does not arise without the necessity of a court order to that effect.

In interpreting section 362(c)(3)(A), a number of courts have contrasted the language used by Congress therein with the provisions of section 362(a). Upon the filing of a bankruptcy petition, section 362(a)(1) stays pre-bankruptcy actions "against the debtor." Subparagraph (a)(2) stays enforcement of judgments "against the debtor or against property of the estate." Subparagraph (a)(3) stays actions to obtain possession of "property of the estate." Subparagraph (a)(4) enjoins actions to create or perfect liens "against property of the estate." Subparagraph (a)(5) enjoins actions involving prepetition liens "against property of the debtor." Subparagraph (a)(6) stays collection actions "against the debtor." Subparagraph (a)(7) enjoins setoff involving "any claim against the debtor." And subparagraph (a)(8) stays Tax Court litigation involving prepetition "tax liability of a debtor." Therefore, the bankruptcy stay created by section 362(a) protects, in its various subparagraphs, three categories: the debtor, the debtor's property, and property of the estate.

The language Congress used in section 362(c)(3)(A) provides for the expiration upon thirty days of the stay concerning "debt or property securing such debt" but only "with respect to the debtor." Given the wording and categorization found in section 362(a), termination of the stay with respect to the debtor means that: suits against the debtor can commence or continue postpetition because section 362(a)(1) is no longer applicable; judgments may be enforced against the debtor, in spite of section 362(a)(2); collection actions may proceed against the debtor despite section 362(a)(6); and liens against the debtor's property may be created, perfected and enforced regardless of section 362(a)(5). However, since section 362(c)(3)(A) does not purport to terminate the stay as to estate property—a concept defined by section 541(a), and which property is distinct from the debtor or the debtor's property— the stay provisions imposed by sections 362(a)(3), (a)(4), and part of (a)(2), expressly protecting property of the estate, do not expire after thirty days. *See, e.g., In re Harris,* 342 B.R. 274, 277–78 (Bankr. N.D.Ohio 2006); *In re Moon,* 339 B.R. 668, 671 (Bankr.N.D.Ohio 2006); *In re Jones,* 339 B.R. 360 (Bankr.E.D.N.C.2006); *In re Johnson,* 335 B.R. 805 (Bankr.W.D.Tenn. 2006); *see also In re Baldassaro,* 338 B.R. 178, 185 (Bankr.D.N.H.2006).

obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before

the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning a corporate debtor's tax liability for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

A similar conclusion had been reached by a commentator even before the provisions of section 362(c)(3) became effective in October 2005. *See* Napoli, *The Not–So–Automatic Stay: Legislative Changes to the Automatic Stay in a Case Filed by or Against an Individual Debtor,* 79 Am. Bankr.L.J. 749, 767 (2005). Moreover, this literal reading of the statute is strongly supported by 11 U.S.C. § 362(c)(4)(A)(i), also enacted in April 2005. *See In re Harris,* 342 B.R. at 278–79; *In re Moon,* 339 B.R. at 671.

Section 362(c)(4) applies whenever an individual debtor had two or more cases dismissed pending within the year prior to his latest filing. In that instance, Congress directed in clause (i) that "the stay under subsection (a) shall not go into effect upon the filing of the later case." If Congress had intended in section 362(c)(3)(A) that the entire automatic stay created by section 362(a) be terminated after thirty days, and not just the bankruptcy stay as to the debtor and his property, it would have used the same language as found in section 362(c)(4)(A)(i), promulgated at the same time. *See In re Harris,* 342 B.R. at 278–79; *In re Moon,* 339 B.R. at 671. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (quoting *United States v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir.1972)); *see generally Banjo Buddies, Inc. v. Renosky,* 399 F.3d 168, 174 (3d Cir.2005).[5]

Finally, construction of section 362(c)(3)(A) as written does not lead to an absurd result. *See generally Lamie v.*

---

**5.** In a recent non-precedential decision, the Third Circuit Court of Appeals observed that this principle of statutory construction should not be utilized when to do so would ignore other related provisions of the statute. *In re DeNofa,* 124 Fed.Appx. 729, 731 (3d Cir. 2005). In this instance, at least three other portions of section 362, in addition to section 362(c)(4), support the conclusion that Congress intended a distinction between terminating the stay as to property of the estate, and terminating the stay as to the debtor and property of the debtor.

First, section 362(e)(1) provides in part:
Thirty days after a request under subsection (d) of this section for relief from the stay of any act *against property of the estate under subsection (a) of this section,* such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection (d) of this section.
(Emphasis added.) This provision terminates the stay only as to property of the estate if a timely resolution of a creditor's lift-stay motion does not occur.

Second, section 362(c)(1) provides:
(c) Except as provided in subsections (d), (e), (f), and (h) of this section—
(1) the stay of an act *against property of the estate under subsection (a)* of this section continues until such property is no longer property of the estate[.]
(Emphasis added.) Again, the stay against property of the estate only is terminated in the event of abandonment or other circumstances in which property leaves the estate.

Finally, section 362(h)(1), also enacted in April 2005, provides as to personal or leased property:
In a case in which the debtor is an individual, *the stay provided by subsection (a) is terminated with respect to personal property of the estate or of the debtor* securing in whole or in part a claim, or subject to an unexpired lease, and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2) . . .
(Emphasis added.) If terminating the stay as to the debtor's property also terminates the stay as to estate property, the language of this subsection is redundant.

*United States Trustee,* 540 U.S. at 536–38, 124 S.Ct. 1023.[6] In permitting creditors to proceed after thirty days (unless directed otherwise by court order) against the debtor and the debtor's property, but not against property of the estate, Congress has balanced competing interests. Moreover, even a partial termination of the bankruptcy stay established by section 362(a) can have meaningful consequences in certain circumstances.

First, subsection (c) applies in all bankruptcy cases, including chapter 7 cases. By continuing to protect estate property in section 362(c)(3), Congress was allowing chapter 7 trustees the normal opportunity to determine, even in instances where an individual debtor has filed a second case, whether there is non-exempt equity in property of the estate that could be liquidated for the benefit of creditors. In balancing the respective interests of an individual secured creditor against creditors as a whole, Congress apparently decided that the concerns of abusive bankruptcy filings as to secured creditors were less acute in instances of second filings within one year, as opposed to third filings. Therefore, in the second filing circumstance, secured creditors would still need to seek court approval to terminate the stay under section 362(d) in order to recover estate property serving as their collateral. In third or more filings, the bankruptcy trustee would have to move quickly so as to reimpose the stay.

Second, Pennsylvania (as well, perhaps, as other states) permits secured creditors to proceed against the debtor *in personam* or *in rem.* See *Meritor Sav. Bank v. Peppertree Associates, Ltd.,* 1991 WL

91562, at *2 (E.D.Pa.1991); *Bank of Pennsylvania v. G/N Enterprises, Inc.,* 316 Pa.Super. 367, 371, 463 A.2d 4 (1983); *Berks–Lehigh Valley Production Credit Ass'n v. Gerhard,* 1988 WL 188440, 1 Pa. D. & C.4th 647 (Pa.Com.Pl.1988). If a secured creditor proceeds against the debtor by suit on a bond or upon a promissory note and obtains a judgment, then state law permits it to execute upon that judgment in order to recover its collateral. *See Bank of Pennsylvania v. G/N Enterprises, Inc.,* 316 Pa.Super. at 372–73, 463 A.2d 4.

A construction of section 362(c)(3)(A), as written, permits mortgagee lawsuits, against the individual debtor (in any bankruptcy chapter) who has filed a second bankruptcy case within one year, to commence or continue until judgment, without bankruptcy court approval. The debtor needs court approval to stay that litigation. However, court approval under section 362(d) would still be needed by the mortgagee to execute upon estate property, but not as to non-estate property (such as postpetition property acquired by a chapter 7 debtor). This result is another plausible balancing of competing interests: one that allows secured creditors to proceed against the debtor in a non-bankruptcy forum, despite the debtor's second bankruptcy filing, so as to obtain *in personam* judgments.

Third, termination of the automatic stay as to debtors, but not as to property of the estate, will allow all creditors, both secured and unsecured, in bankruptcy cases involving individual debtors to proceed in a number of instances, and so is not an empty gesture. As just observed, all creditors

---

**6.** Nor do I find section 362(c)(3)(A) to be ambiguous, even though it is awkwardly written. *See In re Lamie,* 540 U.S. at 534, 124 S.Ct. 1023. "[A] provision is ambiguous when, despite a studied examination of the statutory context, the natural reading of a provision remains elusive." *In re Price,* 370 F.3d at 369. For the reasons stated in the text, the language in this statutory provision is clear.

bringing *in personam* suits are permitted to enter judgment and to execute upon non-estate property. Furthermore, in situations where an individual debtor has mere possession of property without a right of title or even right of possession (such as a trespasser or holdover tenant), the bankruptcy stay under section 362(a) still arises. *See In re Atlantic Business & Community Corp.*, 901 F.2d 325, 328 (3d Cir.1990); *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427 (2d Cir.1987), *cert. denied*, 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988). But under the language of section 362(c)(3)(A), this protection of mere possession ends in thirty days unless affirmatively extended by the court. For example, if the debtor's second bankruptcy filing within one year followed the entry of a state court judgment in ejectment, the bankruptcy stay would terminate automatically in thirty days to allow the property owner's recovery of the realty.

Accordingly, given the provisions of section 362(c)(3)(A) and the directive that judges should construe the language of the statute as written unless absurd, I agree with the debtor in this contested matter (and with other courts that have considered this issue) that the automatic stay remains in effect, insofar as the debtor's pre-bankruptcy interest in 5425 North 11th Street and 2735 Opal Street became property of the estate under section 541(a). Thus, his failure to seek to extend the bankruptcy stay within thirty days of filing does not alter that result. To the extent the two objecting secured creditors desire relief from the bankruptcy stay as to prop-

erty of the estate, they must proceed by motion under section 362(d) and Fed. R. Bankr.P. 4001(a).[7] *See, e.g., In re Moon,* 339 B.R. at 672. Any "defect" that the objectors perceive in section 362(c)(3)(A) must be corrected by Congress, not the courts. *Accord In re Johnson–Allen,* 871 F.2d 421, 428 (3d Cir.1989) ("[I]t is not the function of this court to cure any perceived 'defects' in that legislation. That authority is granted to Congress alone."), *aff'd sub nom., Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990).

### C.

The debtor also seeks to extend the bankruptcy stay as to him and his property against all creditors, even though he has not complied with the requirement in section 362(c)(3)(B) that he so request within thirty days of the commencement of his case. A number of courts have held that his failure to do so precludes any relief. *See, e.g., In re Berry,* 340 B.R. 636 (Bankr. M.D.Ala.2006); *In re Whitaker,* 341 B.R. 336 (Bankr.S.D.Ga.2006); *In re Wright,* 339 B.R. 474 (Bankr.E.D.Ark.2006).

■ I agree with the objectors that once a portion of the bankruptcy stay established by section 362(a) has expired by virtue of section 362(c)(3), that portion cannot be "resurrected" as if it had never terminated. Therefore, if a debtor seeks to extend the stay beyond thirty days as permitted by section 362(c)(3)(B), it is incumbent upon him to insure that his motion is filed and heard within the thirty-day window.[8]

---

7. Indeed, National City Mortgage Co. has already done so, and its motion shall be heard shortly.

8. Some courts have reasoned that if a debtor files a motion within thirty days, but the motion is not determined within the thirty day

period as required by section 362(c)(3)(B), the court can still decide the motion and reimpose the stay, relying upon section 362(c)(4). *See, e.g., In re Beasley,* 339 B.R. 472 (Bankr. E.D.Ark.2006). As the debtor here did not even file his motion within the thirty-day period, I need not reach that issue. I do note,

But this conclusion does not complete the analysis.

In *In re Wedgewood Realty Group, Ltd.*, 878 F.2d 693, 701 (3d Cir.1989), the Court of Appeals for the Third Circuit held that a bankruptcy judge has the power, under section 105(a) of the Bankruptcy Code, to enjoin a creditor from acting against property of the estate, even if that same creditor had previously obtained relief from the bankruptcy stay. *See, e.g., Matter of Martin Exploration Co.*, 731 F.2d 1210, 1214 (5th Cir.1984); *In re Orfa Corp. of Philadelphia*, 170 B.R. 257, 267(E.D.Pa.1994) ("[T]he court concludes that an inadvertent failure to hold a preliminary hearing within thirty days from the filing of a motion seeking relief from the stay automatically terminates the automatic stay per § 362(e) although the bankruptcy court, upon proper application and satisfaction of applicable standards, may reimpose the stay pursuant to its injunctive powers under § 105(a).").

The *Wedgewood* decision involved a creditor who had obtained stay relief by operation of section 362(e), because no order continuing the stay had been issued within thirty days from the filing of the motion for relief. But the power of a bankruptcy court to enjoin a creditor who previously obtained relief from the bankruptcy stay has not been limited to matters involving section 362(e). Thus, courts have held that the power under section 105(a) to enjoin a creditor applies even when the statutory bankruptcy stay had been terminated previously after a hearing on the merits. *See In re Twenver, Inc.*, 149 B.R. 950 (D.Colo.1993); *In re Salzer*, 1991 WL 119153 (Bankr.N.D.Ind.1991); *see also In re Gledhill*, 76 F.3d 1070 (10th Cir.1996).[9]

■ In this contested matter, the objecting creditors do not persuasively offer a meaningful distinction between the expiration of a stay as to the debtor after thirty days under section 362(c)(3) and the expiration of the stay as to property of the estate after thirty days under section 362(e)(1).[10] Therefore, when a portion of the bankruptcy stay under section 362(a) has been terminated by virtue of section 362(c)(3), the debtor may seek to enjoin creditors by virtue of section 105(a). *See In re Whitaker*, 341 B.R. at 346–47.

■ In approving the use of section 105(a) to enjoin a creditor who otherwise has relief from the bankruptcy stay, the Third Circuit instructed that the debtor must meet the traditional standards for injunctive relief:

> In order to obtain section 105(a) injunctive relief, the debtor, in accordance with Bankruptcy Rule 7065 and Fed. R.Civ.P. 65, has the burden of demonstrating to the court the following: substantial likelihood of success on the merits, irreparable harm to the movant, harm to the movant outweighs harm to the nonmovant, and injunctive relief would not violate public interest.

*In re Wedgewood Realty Group, Ltd.*, 878 F.2d at 700–01.[11] Other courts have since

however, that section 362(c)(4)(C) provides that a stay issued under that provision is not retroactive.

**9.** The *Gledhill* decision involved the use of Fed.R.Civ.P. 60(b)(6) (incorporated by Bankruptcy Rule 9024) to vacate a previous lift stay order entered after a hearing on the merits. Rule 9024 does not apply in this instance.

**10.** Under the October 2005 amendments to the Bankruptcy Code, section 362(e) has now become section 362(e)(1).

**11.** Of course, Fed. R. Bankr.P. 7001(7) provides that a party seeking injunctive relief in bankruptcy court should proceed by filing a summons and complaint, thereby commencing an adversary proceeding. Neither Prime

followed this approach. *See, e.g., In re Orfa Corp. of Philadelphia,* 170 B.R. at 267; *In re Salzer,* 1991 WL 119153, at *4; *In re Smith,* 111 B.R. 102, 104–05 (Bankr. E.D.Pa.1990).

■ In applying this injunctive relief standard, I agree with Prime Funding that the debtor has not met his evidentiary burden.[12] First, he has shown no irreparable harm if *in personam* litigation were to continue against him, or if creditors were permitted to proceed against non-estate property. *See generally In re RBGSC Inv. Corp.,* 240 B.R. 536, 545 (Bankr.E.D.Pa.1999), *aff'd,* 253 B.R. 369 (E.D.Pa.2000). His evidence has focused entirely upon his real properties, which properties, insofar as they are part of the bankruptcy estate, remain protected under section 362(a).

Moreover, to the extent that the debtor was obligated to demonstrate that his proposed chapter 13 reorganization plan is likely to be approved, *see In re Twenver, Inc.,* 149 B.R. at 953; *In re Smith,* 111 B.R. 102, 104–05 (Bankr.E.D.Pa.1990), he has not done so. His proposed plan relies upon the sale of one or more of his investment properties. His uncorroborated personal valuation opinions—asserting that the properties have tripled or more in value in the past year or two—are insufficient to carry his burden. *See In re Brown,* 244 B.R. 603, 611–612 (Bankr. W.D.Va.2000) (testimony of a debtor as to value, while admissible, may not be credible if the debtor offers no basis for his valuation); *see generally In re Glaser,* 2002 WL 32375007, at *5 (Bankr.E.D.Va. 2002) ("Although owners have historically been allowed to offer opinion testimony as to the value of their real and personal property, the probative value of such testimony is frequently not very high.") (footnote omitted). His proposed plan has no sale deadlines. Moreover, he has been unable to sell some of these properties on his own, and he has not engaged any broker or real estate agent, let alone provided a signed sale agreement. Thus, based

---

Funding nor National City have raised this issue, so the procedural defect will be treated as waived. *See, e.g., In re Zolner,* 249 B.R. 287, 292 (N.D.Ill.2000); *In re Mark Twain Marine Industries, Inc.,* 115 B.R. 948, 949 n. 1 (Bankr.N.D.Ill.1990); *In re Gain Electronics Corp.,* 117 B.R. 805, 806 n. 2 (Bankr.D.N.J. 1990); *In re Wlodarski,* 115 B.R. 53 (Bankr. S.D.N.Y.1990); *In re Stern,* 70 B.R. 472, 473 n. 1 (Bankr.E.D.Pa.1987).

12. Section 362(c)(3)(C) places a "clear and convincing" burden upon the debtor to extend the stay beyond thirty days in certain instances. *See In re Castaneda,* 342 B.R. 90 (Bankr.S.D.Cal.2006); *In re Harris,* 342 B.R. at 277–78. Where a debtor seeks injunctive relief under section 105(a) because he fails to timely seek relief under section 362(c)(3)(B), the evidentiary burden should not be lessened.

Here, the debtor complained that dismissal of his first case was due to the neglect of his former attorney in failing to file the requisite bankruptcy documents. In such an instance, section 362(c)(3)(C)(i)(II)(aa) provides that the clear and convincing standard is inapplicable. However, section 362(c)(3)(C)(i)(III) imposes a clear and convincing standard if there has been no material change in the debtor's "financial or personal affairs" since dismissal or any other reason to believe that this new chapter 13 case will conclude with a completed confirmed plan. *See In re Castaneda.*

The debtor's financial circumstances between dismissal of his first case and commencement of the second appear unchanged. It is doubtful that Congress intended that a debtor's engagement of new counsel in the second case would afford the debtor relief from section 362(c)(3)(C)(i)(III). *See In re Ellis,* 339 B.R. 136, 141 (Bankr.E.D.Pa.2006). Thus, the debtor's evidentiary burden under section 105(a) was heavy. Moreover, the debtor's evidence did not even meet the traditional evidentiary burden for injunctive relief: preponderance of the evidence. *See generally UBS Painewebber, Inc. v. Aiken,* 197 F.Supp.2d 436, 440 (W.D.N.C.2002).

upon the evidence presented, this plan is too speculative and so is unlikely to be approved. *See In re Calvanese*, 169 B.R. 104, 108–10 (Bankr.E.D.Pa.1994) (and cases cited); *see generally In re Investment Company of The Southwest, Inc.*, 341 B.R. 298, 315 (10th Cir. BAP 2006) ("[T]here must be some evidence that Debtor's overall plan to sell part or all of its inventory is reasonable, based on either past performance or identifiable factors indicating the likelihood of probable future performance, or both.").

Accordingly, the debtor is not entitled to relief under section 105(a). *See In re Smith.*