**In re James Bigelow RESWICK, Jr., aka Jim Reswick, Debtor.**

**James Bigelow Reswick, Jr., Appellant**

**v.**

**Natalia U. Reswick; Stephen Benda; Vikaterina Tran; Law Offices of Stephen Benda, Appellees.**

**BAP No. NC–10–1154–SaHKi. Bankruptcy No. 09–32489.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Oct. 20, 2010.

Decided Feb. 4, 2011.

Cheryl Christine Rouse, Law Offices of Rouse & Bahlert, San Francisco, CA, for Appellant.

Stephen Benda, Law Offices of Stephen Benda, for Appellee.

Before: SALTZMAN [1], HOLLOWELL and KIRSCHER, Bankruptcy Judges.

SALTZMAN, Bankruptcy Judge.

## OPINION

This appeal arises from the bankruptcy court's order denying the debtor's motion for damages for violation of the automatic stay under 11 U.S.C. § 362(k)(1).[2] The debtor contended that his ex-wife's postpetition garnishment of his wages violated the stay. His ex-wife argued—and the bankruptcy court agreed—that because the case was the debtor's second case within a year, the stay fully expired 30 days after the second case was filed pursuant to section 362(c)(3)(A), and accordingly the wage garnishment did not violate the stay. For the reasons discussed below, we AFFIRM the bankruptcy court's order denying the debtor's motion for damages.

## I. FACTS

Appellant James Bigelow Reswick, Jr. (the "Debtor") initially filed a voluntary chapter 13 petition on March 23, 2009. The case was dismissed for non-payment on June 29, 2009. The Debtor filed a second voluntary chapter 13 petition (the "Second Case") on August 25, 2009 (the "Second Petition Date"). The parties agree that because the Second Case was filed within a year of the earlier case's dismissal, section 362(c)(3) applied, terminating the automatic stay unless the bankruptcy court extended the stay on motion of a party in interest after a hearing held within the first 30 days following the Second Petition Date. No motion was filed, and as a result, the automatic stay terminated on September 24, 2009.

On October 2, 2009, Natalia Reswick ("Reswick"), the Debtor's ex-wife, initiated wage garnishment proceedings against the Debtor's post-petition earnings to collect a February 2008 Superior Court judgment.

On March 15, 2010, the Debtor filed a motion for damages for violation of the automatic stay under section 362(k)(1), seeking reimbursement of the $4,444.32 already garnished by Reswick plus attorneys' fees, emotional distress and punitive damages in the amount of $54,750.00. His motion was based on his contention that the automatic stay terminated only as to him and not as to the estate.

The bankruptcy court held a hearing on the motion on April 2, 2010 and took the matter under advisement to consider whether the automatic stay terminated in its entirety on the 30th day after the Second Petition Date, or whether the stay remained in place to prohibit acts against property of the estate. On April 15, 2010, the bankruptcy court denied the Debtor's motion on the grounds that the automatic stay terminated in its entirety on September 24, 2009, and accordingly, the wage garnishment commenced on October 2, 2009 did not violate the stay. The Debtor filed this timely appeal on April 29, 2010.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (G). We have jurisdiction

1. Hon. Deborah J. Saltzman, Bankruptcy Judge for the Central District of California, sitting by designation.

2. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, as enacted and promulgated as of October 17, 2005, the effective date of most of the provisions of the Bankruptcy Abuse Prevention and Consumer Protections Act of 2005 ("BAPCPA"), Pub.L. 109–8, 119 Stat. 23.

over this appeal pursuant to 28 U.S.C. § 158.

### III. ISSUE

Whether the bankruptcy court erred in ruling that the automatic stay terminated in its entirety (i.e., as to the Debtor, the Debtor's property and property of the estate) under section 362(c)(3)(A) on the 30th day after the Second Petition Date.

### IV. STANDARD OF REVIEW

 A bankruptcy court's interpretation of the bankruptcy code is reviewed de novo. *Bankr. Receivables Mgmt. v. Lopez (In re Lopez)*, 345 F.3d 701, 705 (9th Cir. 2003).

### V. DISCUSSION

A. *Introduction*

This appeal centers around a narrow issue. The parties agree that when the Debtor filed his chapter 13 petition on August 25, 2009, he had one bankruptcy case pending within the previous year. They also agree that because no motion was filed to continue the automatic stay within the first 30 days after the Second Petition Date, the stay terminated pursuant to section 362(c)(3)(A) on September 24, 2009. The only issue in dispute is the extent of the termination. If, as the Debtor argues, section 362(c)(3)(A) operates to terminate the stay only as to the debtor, Reswick's wage garnishment proceedings initiated on October 2, 2009 violated the stay by collecting estate property.[3] However, if, as Reswick argues, section 362(c)(3)(A) terminates the stay in its entirety (i.e., as to the debtor, the debtor's property and property of the estate), Reswick did not violate the stay by initiating

wage garnishment proceedings on October 2, 2009.

The bankruptcy court agreed with Reswick. The court's order noted that there are two lines of cases addressing the scope of termination of the stay under section 362(c)(3)(A) and concluded: "[h]aving considered the opposing lines of authority, the court agrees with the persuasive reasoning set forth in *In re Daniel*, 404 B.R. 318 (Bankr.N.D.Ill.2009), and holds that the automatic stay terminated *in its entirety* on the 30th day after the petition date." (Emphasis added.)

The bankruptcy court adopted the minority—but better-reasoned—interpretation.

B. *The Two Interpretations Of Section 362(c)(3)(A)*

The relevant bankruptcy code provision, section 362(c)(3)(A), provides:

(3) [I]f a single or joint case is filed by or against debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case, of the debtor was pending within the preceding 1–year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)—

(A) the stay under subsection (a) *with respect to any action taken with respect to a debt or property securing debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case.*

11 U.S.C. § 362(c)(3)(A) (emphasis added).

This appeal centers around how the phrase "with respect to the debtor" limits the termination of the automatic stay "with

---

**3.** The parties also agree that the Debtor's postpetition earnings are property of the estate pursuant to section 1306(a)(2).

respect to any action taken with respect to a debt or property securing debt or with respect to any lease" for a repeat filer. Two distinct interpretations of section 362(c)(3)(A) have developed since the provision was added to the bankruptcy code as part of BAPCPA in 2005.

The majority interpretation finds the phrase "with respect to the debtor" to be both critical and unambiguous, and concludes that on the 30th day after the petition date, the automatic stay terminates only with respect to the debtor and the debtor's property, but not as to property of the estate. *See, e.g., Holcomb v. Hardeman (In re Holcomb)*, 380 B.R. 813 (10th Cir. BAP 2008); *Jumpp v. Chase Home Finance, LLC (In re Jumpp)*, 356 B.R. 789 (1st Cir. BAP 2006); *In re Pope*, 351 B.R. 14 (Bankr.D.R.I.2006); *In re Murray*, 350 B.R. 408 (Bankr.S.D.Ohio 2006); *In re Brandon*, 349 B.R. 130 (Bankr.M.D.N.C. 2006); *Bankers Trust Co. of Cal. v. Gillcrese (In re Gillcrese)*, 346 B.R. 373 (Bankr.W.D.Pa.2006); *In re Williams*, 346 B.R. 361 (Bankr.E.D.Pa.2006); *In re Harris*, 342 B.R. 274 (Bankr.N.D.Ohio 2006); *In re Jones*, 339 B.R. 360 (Bankr.E.D.N.C. 2006); *In re Moon*, 339 B.R. 668 (Bankr. N.D.Ohio 2006); *In re Johnson*, 335 B.R. 805 (Bankr.W.D.Tenn.2006). Although these decisions state that the court need not read beyond the phrase "with respect to the debtor" to discern its meaning, *see, e.g., Jones*, 339 B.R. at 363 ("Section 362(c)(3)(A) provides that the stay terminates 'with respect to the debtor.' How could that be any clearer?"), these decisions arguably do read beyond the phrase because they find that the stay terminates with respect to the debtor *and* to any property of the debtor that is not property of the estate. *Id.* at 362; *see also Holcomb*, 380 B.R. at 816 ("[W]e conclude that the language of § 362(c)(3)(A) terminates the stay only as to the debtor and the debtor's property."); *Jumpp*, 356 B.R. at 797 ("Section 362(c)(3)(A) provides for a partial termination of the stay.").

The *minority interpretation* urges that the phrase "with respect to the debtor" must be analyzed in the context of section 362(c)(3) as a whole. *See In re Jupiter*, 344 B.R. 754 (Bankr.D.S.C.2006), expanded upon in *In re Daniel*, 404 B.R. 318 (Bankr. N.D.Ill.2009), and adopted in two subsequent decisions including the order on appeal here. Using this analysis, these courts conclude that section 362(c)(3)(A) terminates the automatic stay in its entirety (i.e., with respect to the debtor, the debtor's property and property of the estate). *Id.* at 329; *Jupiter*, 344 B.R. at 759; *In re Furlong*, 426 B.R. 303, 307 (Bankr. C.D.Ill.2010). They construe "the remaining language of 'with respect to the debtor' to define which debtor is effected by this provision, with reference to section 362(c)(3)." *Jupiter*, 344 B.R. at 759. Because section 362(c)(3) begins by referencing either a "single or joint case," the language "with respect to the debtor" in section 362(c)(3)(A) simply distinguishes between the debtor and the debtor's spouse. *Id.; Daniel*, 404 B.R. at 326. The courts found further support in the legislative history of section 362(c)(3)(A), noting its intent to address the perceived abuse of successive filings. *Id.* at 327; *Jupiter*, 344 B.R. at 761. *See also In re Curry*, 362 B.R. 394 (Bankr.N.D.Ill.2007) (interpreting section 362(c)(3)(A) to terminate the automatic stay in its entirety is consistent with history aimed at discouraging successive bankruptcy filings).

■ The two interpretations are fundamentally different. Under the majority approach, it is unnecessary to do more than consider the language of the phrase "with respect to the debtor." "Viewed in isolation, the language itself is unambiguous." *Jumpp*, 356 B.R. at 793. The mi-

nority approach does not expressly determine that the language is ambiguous but reads "with respect to the debtor" in context with section 362(c)(3) as a whole and then looks to the provision's legislative history to support their reading. Because reading the phrase in context, rather than in isolation, better comports with principles of statutory construction, the minority interpretation is more persuasive. And while we recognize the desire to be cautious in designating statutory text as "ambiguous," we believe that such a designation is appropriate here. Our interpretation of section 362(c)(3)(A) finds support in the legislative history.

C. *Principles of Statutory Construction Support Reading "with respect to the debtor" With All Of Section 362(c)(3)*

 Statutory interpretation begins with the language of the statute. "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the texts is not absurd—is to enforce it according to its terms." *Lamie v. United States Tr.*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004), quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000). A court must consider "the language itself, the specific context in which that language was used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). The Supreme Court has expanded upon this premise:

> The definition of words in isolation however, is not necessarily controlling in statutory construction. A word in a statute may or may not extend to the outer limits of its definitional possibilities. Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.

*Dolan v. U.S. Postal Service*, 546 U.S. 481, 486, 126 S.Ct. 1252, 163 L.Ed.2d 1079 (2006); *see also Boise Cascade Corp. v. U.S. E.P.A.*, 942 F.2d 1427, 1432 (9th Cir. 1991) (courts "must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless, or superfluous").

Here, the Debtor argues that a phrase within section 362(c)(3)(A) "with respect to the debtor"—is both critical and unambiguous, as found by the majority interpretation. Reswick argues that the statutory phrase "with respect to the debtor" must not be read in isolation, but rather in the context of the whole statutory provision. Reswick's argument is more consistent with principles of statutory construction. When read in isolation, "with respect to the debtor" may appear unambiguous; however, when read within the context of section 362(c)(3) a provision which begins with the phrase "if a single or joint case of the debtor was pending within the preceding 1–year period" and goes on to discuss the stay of any action taken "with respect to a debt or property securing debt or with respect to any lease"—the phrase must be examined more closely to give the full provision meaning.

1. *Interpreting section 362(c)(3)(A) as terminating the stay only with respect to the debtor and the debtor's property renders section 362(c)(3) internally inconsistent and eliminates its practical impact*

The Debtor argues that section 363(c)(3)(A) terminates the stay only with respect to the debtor personally. No court

decision has adopted this narrow interpretation. The majority interpretation holds that "with respect to the debtor" limits termination of the stay to the debtor and any property of the debtor that is not estate property. *See, e.g., Holcomb,* 380 B.R. at 816; *Jumpp,* 356 B.R. at 796–97.[4]

These two interpretations—both of which find that section 362(c)(3)(A) does not terminate the stay with respect to estate property—suffer from the same flaw. Interpreting "with respect to the debtor" as a distinction regarding *property* (i.e., the stay terminates with respect to the debtor personally and to non-estate property, but not as to estate property) renders section 362(c)(3)(A) internally inconsistent. Section 362(c)(3)(A) begins as follows: "the stay under subsection (a) with respect to *any action taken with respect to a debt or property securing debt or with respect to any lease* shall terminate ..." 11 U.S.C. § 362(c)(3)(A) [emphasis added]. If the phrase "with respect to the debtor" meant that the automatic stay only terminated as to the debtor personally and as to non-estate property, the opening clause of section 362(c)(3)(A) would be surplusage. There would be no reason for section 362(c)(3)(A) to reference actions "with respect to a debtor or property securing debt or with respect to any lease" if

the interpretation of the Debtor and the majority were correct.

The Debtor's interpretation, and the majority interpretation, would also render section 362(c)(3)(A) devoid of any practical effect. Very few creditors would seek to pursue only the debtor personally, or only property of the debtor. Indeed, this interpretation would provide no meaningful relief to creditors in chapter 13 cases, where repeat filings are most prevalent. Creditors in a chapter 13 case could take no action against property that the debtor owned at the time the case was commenced, because it is property of the estate under section 541(a)(1),[5] and they could take no action against property that the debtor acquired post-petition because it would also constitute property of the estate under section 1306(a).[6] As a result, a party such as Reswick in this case would have any efforts to collect a judgment thwarted by a repeat filing.

The interpretation that the Debtor urges us to adopt also makes section 362(c)(3)(A) difficult to reconcile with section 362(c)(3)(B), which provides the mechanism to extend the automatic stay in the case of a repeat filer. Section 362(c)(3)(B) permits a party in interest, upon notice and a hearing, to seek a continuation of the automatic stay beyond the 30–day period if the movant can demonstrate that the case

---

**4.** At oral argument, counsel for the Debtor argued, somewhat inconsistently with the briefing submitted, that the stay terminates with respect to the debtor and the debtor's property.

**5.** Section 541(a)(1) provides, in relevant part, that the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

**6.** Section 1306(a) provides:
Property of the estate includes, in addition, to the property specified in section 541 of the this title—

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and
(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.
11 U.S.C. § 1306(a).

was filed "in good faith as to the creditors to be stayed." 11 U.S.C. § 362(c)(3)(B). This provision specifically allows a "party in interest," not just the debtor, to seek an extension of the automatic stay. Section 362(c)(3)(C) goes on to list certain circumstances in which clear and convincing evidence is needed to establish good faith. Property of the estate would have to be subject to the stay termination for any party other than the debtor to have sufficient reason to file the motion. *See Jupiter*, 344 B.R. at 760. "It seems illogical that Congress would enact a provision which both requires moving parties to meet a high burden of proof and which requires the courts to hear these matters on an expedited basis, only to have both the process and the end result meaningless and of no utility if property of the estate remains protected by the automatic stay, notwithstanding a termination of the automatic stay under § 362(c)(3)(A)." *Id.; see also In re Jones*, 339 B.R. 360, 364 (Bankr. E.D.N.C.2006) ("If § 362(c)(3)(A) only applies with respect to the debtor, the argument is that only the debtor would be interested in extending the stay. It is true that if § 362(c)(3)(A) only applies with respect to the debtor, it is unlikely that anyone other than the debtor would seek an extension....").[7]

Finally, in assessing the statutory construction of the majority interpretation, we note that it does not simply find that the stay terminates with respect to the debtor personally, even though a "plain language" interpretation of "with respect to the debtor" might dictate such a result (as the Debtor argued in his brief). Instead, the majority interpretation finds that the stay terminates "with respect to the debtor and the debtor's non-estate property," which somewhat undermines the persuasiveness of their "plain language" argument.

2. *The better reading interprets section 362(c)(3)(A) as distinguishing between the debtor and a joint-filing spouse*

Rather than reading "with respect to the debtor" as a distinction between *property*, the minority interpretation persuasively reads the phrase as a distinction regarding *persons* in the context of multiple bankruptcy filings. The most plausible and least troublesome reading of "with respect to the debtor" places its meaning in the context of joint cases filed by a married couple. *Daniel*, 404 at 326. *See also Jupiter*, 344 B.R. at 759; *In re Parker*, 336 B.R. 678, 680–81 (Bankr.S.D.N.Y.2006). The beginning of section 362(c)(3) states: "if a single or joint case is filed by or against debtor ..." 11 U.S.C. § 362(c)(3). Keeping this introduction in mind, "with respect to the debtor" in section 362(c)(3)(A) is best interpreted as meaning that the stay terminates as to a repeat-filing debtor, but not as to the debtor's spouse who is not a repeat filer.

Interpreting "with respect to the debtor" as distinguishing between a debtor and his or her spouse is consistent with the distinction made at the beginning of section 362(c)(3), which provides: "if *a single or joint case* is filed by or against debtor who is an individual in a case under chapter 7, 11, or 13, and if *a single or joint case*

---

**7.** We also note, as did the court in Jupiter, that the majority interpretation creates an inconsistency with subsection 362(j), which allows a party in interest to request an order confirming that the stay has terminated under subsection (c). "This provision would be inconsistent with § 362(c)(3)(A), if it does not effect a wholesale termination of the stay, because § 362(j) does not carve out exceptions for property that remains protected by the stay and summarily allows parties to confirm that the stay has been terminated under § 362(c)." *Jupiter*, 344 B.R. at 760.

of the debtor was pending within the preceding 1–year period...." 11 U.S.C. § 362(c)(3) [emphasis added]. Reading "with respect to the debtor" in the very next subsection as distinguishing between a debtor and the debtor's spouse is entirely consistent with the references to "a single or joint case" at the beginning of section 362(c)(3). Because section 362(c)(3)'s opening phrase recognizes that some repeat filing cases are filed by single debtors while others are filed by joint debtors, the phrase "with respect to the debtor" logically refers *to whom* (i.e. the serial filing spouse) termination of the automatic stay applies under section 362(c)(3)(A), not *to which property* the termination applies—particularly given that section 362(c)(3)(A) specifically references "the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease."

Not only is this interpretation the only one which lends meaning and clarity to both the introductory phrase of section 362(c)(3) and section 362(c)(3)(A) as a whole, it is also consistent with other provisions of the bankruptcy code. The *Daniel* court identified multiple bankruptcy code provisions that clearly distinguish "the debtor" from the "the debtor's spouse." *Daniel*, 404 B.R. at 325, *see, e.g.*, 11 U.S.C. §§ 101(10A), 707(b)(7) and 1325(b).

### D. *The Legislative History of Section 362(c)(3)(A) Supports An Interpretation That The Stay Terminates In Its Entirety For A Repeat Filer*

Many courts have found the language of section 362(c)(3)(A) confusing and "have grappled with interpreting this provision." *Curry*, 362 B.R. at 397. The decision relied upon by the bankruptcy court here, *In re Daniel*, found four separate plausible interpretations of section 362(c)(3)(A). *See also In re Paschal*, 337 B.R. 274, 277 (Bankr.E.D.N.C.2006) ("The language of the statute is susceptible to conflicting interpretations, and if read literally, would apply to virtually no cases at all. In sum, it's a puzzler."); *In re Baldassaro*, 338 B.R. 178, 182 (Bankr.D.N.H.2006) (language of section 362(c)(3)(A) is "very poorly written"); *In re Charles*, 332 B.R. 538, 541 (Bankr.S.D.Tex.2005) ("[T]he relevant provisions in the Act are, at best, particularly difficult to parse out and, at worst, virtually incoherent."). While many of the courts following the majority approach interpret section 362(c)(3)(A) to be poorly drafted and confusing, they do not look to the history of the provision for clarification, instead focusing on the "unambiguous" language of five words within section 362(c)(3)(A): "with respect to the debtor."

The *Daniel* court noted that given the overall complexity of the BAPCPA revisions to section 362(c)(3), the concept of terminating the stay "with respect to the debtor" "might" be ambiguous. *Daniel*, 404 B.R. at 327. Similarly, the Jupiter court noted that "this new subsection is imperfectly drafted, may be subject to multiple interpretations, and therefore considered ambiguous." *Jupiter*, 344 B.R. at 761. Despite a reluctance to explicitly find section 362(c)(3)(A) ambiguous, both of these courts looked to the provision's history as guidance.

■■■■ The mere fact that courts disagree on the meaning of a statutory provision does not render that provision ambiguous. Similarly, a provision is not ambiguous simply because multiple courts observe that it is poorly drafted. But where, as here, the two lines of interpretation are so distinct, and a "plain meaning" reading of a statutory provision (or a portion of the provision) has the effect of reading out language written else-

where in the provision while reading in new qualifications that are written nowhere, it is appropriate to conclude that the provision is ambiguous:

> A statute is ambiguous when it is capable of being understood by reasonably informed persons in two or more different senses. In analyzing a statutory text, the court must avoid interpreting words in isolation. "[B]ecause words can have alternative meanings depending on context, we interpret statutes, not by viewing individual words in isolation, but rather by reading the relevant statutory provisions as a whole." This approach reflects the understanding that a provision that may seem ambiguous in isolation often becomes clear when considered against the statutory scheme or vice versa.

*Ileto v. Glock, Inc.*, 421 F.Supp.2d 1274, 1285–86 (C.D.Cal.2006) (internal citations omitted; *quoting Leisnoi, Inc. v. Stratman*, 154 F.3d 1062, 1066 (9th Cir.1998); citing *Int'l Ass'n of Machinists & Aerospace Workers v. BF Goodrich Aerospace Aerostructures Group*, 387 F.3d 1046, 1051–52 (9th Cir.2004)).

■■■ When statutory language is ambiguous, a court may look to the legislative history behind that statute. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 737, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985)(when a statute is ambiguous, the court may seek guidance in the relevant legislative history); *Barstow v. IRS (In re MarkAir, Inc.)*, 308 F.3d 1038, 1043 (9th Cir.2002) *citing Merkel v. Commissioner*, 192 F.3d 844, 848 (9th Cir.1999) ("[I]f the statute is ambiguous, we consult the legislative history, to the extent that it is of value, to aid in our interpretation."); *N.W.*

*Forest Res. Council v. Glickman*, 82 F.3d 825, 834 (9th Cir.1996) ("Where a statute is ambiguous, we may look to legislative history to ascertain its purpose.").

The legislative history of section 362(c)(3)(A) supports our interpretation that the automatic stay terminates in its entirety 30 days after the petition date for a repeat filer.

For many years, successive bankruptcy filings have caused significant problems within the bankruptcy system and for creditors seeking to pursue state law remedies. "Abusive debtors file multiple bankruptcy petitions solely to take advantage of the automatic stay." Robert Lefkowitz, *The Filing of a 6 Bankruptcy Petition in Violation of 11 U.S.C. § 109(g): Does it Invoke the Automatic Stay?*, 26 Cardozo L.Rev. 297, 297–98 (2005) (introductory discussion addressing general abuse of the automatic stay by serial filers). "These 'serial filers' seek only to delay creditor action." *Id.* at 298. The Congressionally created National Bankruptcy Review Commission addressed the issue of successive filers abusing the power of the automatic stay. *See Daniel*, 404 B.R. at 327; Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106, §§ 602–03 (Oct. 22, 1994). After investigating, "[t]he Commission responded to this problem by suggesting that the automatic stay not go into effect in certain successive" bankruptcy filings. *Daniel*, 404 B.R. at 327. Shortly thereafter, both the House and Senate Judiciary Committees created draft bankruptcy reform provisions to implement the Commission's suggestion. Section 121 of "The Bankruptcy Reform Act of 1998" (drafted by the House Judiciary Committee),[8] section 303 of the "Consumer Bankruptcy Reform

---

**8.** Section 121 of "The Bankruptcy Reform Act of 1998" provided:

> If a single or joint case is filed by or against an individual debtor under chapter 7, 11, or 13, and if a single or joint case of that debtor was pending within the previous 1–year period but was dismissed, other than a case refiled under a

Act of 1998" (drafted by the Senate Judiciary Committee) [9] and section 362(c)(3)(A) (adopted by BAPCPA) [10] all contain essentially identical language.

■ The legislative history demonstrates that Congress intended to deter successive bankruptcy filings by imposing stricter limitations on the power of the automatic stay as subsequent bankruptcy cases are filed. In *Curry*, the court noted that "Section 302 of BAPCPA added section 362(c)(3) and 362(c)(4) to the Bankruptcy Code" and this section of BAPCPA legislation was specifically titled "Discouraging Bad Faith Repeat Filings." *Curry*, 362 B.R. at 401. "Section 302 of the Act amends section 362(c) of the Bankruptcy Code to terminate the automatic stay ..." *Id.*, *citing* H.R.Rep. No. 109–31(I) at 69–70 (2005) U.S. Code Cong. & Admin.News 2005, p. 88. The Curry court reasoned that "[t]he legislative history does not support the notion that termination of the automatic stay [in section 362(c)(3)(A)] was only a partial and extremely limited termination ..." *Id.* at 401–02. We agree. The history of section 362(c)(3)(A) indicates that Congress intended it to deter second filings. For this provision to have its intended effect, it must be interpreted as terminating the automatic stay in its entirety.

■ Section 362(c)(4) further evidences this Congressional intent and provides support for our interpretation of section 362(c)(3). Section 362(c)(4) provides that where a debtor commences a third bankruptcy filing (i.e., the debtor had two pending cases within the previous year that were dismissed), the automatic stay "shall not go into effect upon the filing of the later case." 11 U.S.C. § 362(c)(4)(A)(i). In contrast to the second filing, where the automatic stay goes into effect but then terminates on the 30th day after the petition date if an extension is not requested, for a third filing, the stay does not go into effect at all. In *Nelson v. George Wong Pension Trust (In re Nelson)*, 391 B.R. 437 (9th Cir. BAP 2008), this panel noted that section 362(c)(4)(A)(i) does not differentiate between protecting the debtor, property of the debtor or property of the estate, because after a third filing, no stay

chapter other than chapter 7 after dismissal under section 707(b) of this title, the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease will terminate with respect to the debtor on the 30th day after the filing of the later case.
Bankruptcy Reform Act of 1998, H.R. 3150, 105th Cong. § 121 (1998).

9. Section 303 of the "Consumer Bankruptcy Reform Act of 1998" provided:
The stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case if (A) a single or joint filed case is filed by or against an individual debtor under chapter 7, 11, or 13; and (B) a single or joint case of that debtor (other than a case refiled under a chapter other than chap-

ter 7 after dismissal under section 707(b)) was pending during the preceding year but was dismissed.
Consumer Bankruptcy Reform Act of 1998, S. 1301, 105th Cong. § 303 (1998).

10. Section 362(c)(3)(A) provides:
[I]f a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1–year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)—(A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case.
11 U.S.C. § 362(c)(3)(A).

will go into effect and thus there is no need to make such a distinction. In dicta, the *Nelson* court highlighted that "[c]learly, Congress could, and did, intend the consequences of repeat filings to be different, and potentially more severe, as the number of successive filings increase." *Nelson*, 391 B.R. at 452.

There is ample legislative history, and subsequent case law interpreting that history, to support our interpretation in conjunction with the intent to curb the problem of repeat bankruptcy filings: the more times a debtor files, the more difficult it becomes for that debtor to take advantage of the automatic stay. On a debtor's first filing, the debtor has full advantage of the automatic stay. On the debtor's second filing within a year, the stay terminates in its entirety 30 days after the second case is filed, unless a motion to continue the stay is made and a hearing held within the 30–day period—but if the debtor's spouse is not a repeat filer, the spouse is not penalized. And on the debtor's third filing within a year, there is no automatic stay at all. The alternative reading of section 362(c)(3)(A) would leave no meaningful consequence for a debtor filing a second case within a year and would not advance the goal of deterring a debtor's second filing, because there are very few practical situations in which a creditor would take action against a debtor or non-estate property. Any interpretation of section 362(c)(3)(A) other than one terminating the stay in its entirety "would be contrary to the clear legislative history, would do little to discourage bad faith, successive filings, and would create, rather than close, a loophole in the bankruptcy system by allowing these debtors to receive the principal benefit of the automatic stay—protection of property of the estate." *Jupiter*, 344 B.R. at 762.

The purpose of section 362(c)(3)(A) is to discourage multiple filings. Therefore, the interpretation of the language "with respect to the debtor" should not undermine the purpose of the provision, but rather be consistent with Congressional intent.

## VI. CONCLUSION

For the reasons set forth above, section 362(c)(3)(A) terminates the automatic stay in its entirety on the 30th day after the petition date. Here, the automatic stay fully terminated on September 24, 2009. As a result, Reswick's wage garnishment proceedings, commenced on October 2, 2009, did not violate the automatic stay. We AFFIRM.

## JUDGMENT

THIS CAUSE came on to be heard on the record from the above court.

ON CONSIDERATION WHEREOF, it is ordered and adjudged by this Panel that the judgment of the Bankruptcy Court is *AFFIRMED*.