# United States Court of Appeals
## For the First Circuit

No. 18-1573

IN RE: LELAND S. SMITH, JR.,

Debtor.

LELAND S. SMITH, JR.,

Appellant,

v.

STATE OF MAINE BUREAU OF REVENUE SERVICES,

Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Lynch, Stahl, and Barron,
Circuit Judges.

Christopher J. Keach, with whom James F. Molleur and Molleur Law Office were on brief, for appellant.
David Yen and Tara Twomey on brief for National Consumer Bankruptcy Rights Center and National Association of Consumer Bankruptcy Attorneys, amici curiae.
Kevin J. Crosman, Assistant Attorney General, with whom Thomas F. Knowlton, Assistant Attorney General, was on brief, for appellee.

December 12, 2018

**LYNCH**, **Circuit Judge**.    Maine's Bureau of Revenue Services (MRS) has a claim for a tax debt owed by Leland Smith, a repeat Chapter 13 bankruptcy filer.  In this appeal, MRS and Smith dispute the scope of the termination of the Bankruptcy Code's automatic stay for repeat filers like Smith who file a second petition for bankruptcy within a year of the dismissal of a prior bankruptcy case.  See 11 U.S.C. § 362(c)(3)(A).

The filing of a petition for bankruptcy stays collection actions against the debtor, the debtor's property, and property of the bankruptcy estate.  See id. § 362(a).  Yet § 362(c)(3)(A) provides that "if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed," id. § 362(c)(3), then this automatic stay "shall terminate with respect to the debtor on the 30th day after the filing" of a petition for bankruptcy, id. § 362(c)(3)(A) (emphasis added).  Before the end of the thirty-day period, the bankruptcy court "may extend the stay" if the debtor or a creditor shows "that the filing of the [second] case is in good faith."  Id. § 362(c)(3)(B).

This case presents an important question, one of first impression in the courts of appeals: Does § 362(c)(3)(A) terminate the automatic stay as to actions against property of the bankruptcy estate?  Courts have divided.  Some have held that § 362(c)(3)(A) terminates the stay in its entirety, allowing actions against the debtor, the debtor's property, and property of the bankruptcy

- 3 -

estate. Others have held that it terminates the stay only in part, allowing actions against the debtor and the debtor's property to go forward, but preserving the stay as to actions against estate property.

On this close question, we hold that § 362(c)(3)(A) terminates the entire stay thirty days after the filing of a second petition. We note that this only occurs if the procedure for extending the stay, in which the debtor or a creditor has the burden of demonstrating good faith, has not been successfully invoked.

Our holding that § 362(c)(3)(A) terminates the entire stay is based on the provision's text, its statutory context, and Congress's intent in enacting the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) and § 362(c)(3)(A). We first evaluate the parties' textual arguments and, finding that they do not resolve the issue, next consider the statutory context and congressional purpose. We ultimately decide that MRS's reading is the only one compatible with the text, seen in light of its context and purpose.

We affirm the decision of the bankruptcy court, In re Smith, 573 B.R. 298 (Bankr. D. Me. 2017), which was also affirmed by the district court, Smith v. Me. Bureau of Revenue Servs., 590 B.R. 1 (D. Me. 2018).

- 4 -

I.

Leland Smith's first Chapter 13 case, filed in August 2011, was dismissed in October 2014 when Smith failed to make the payments required under his Chapter 13 bankruptcy plan.[1] Two months later, in December 2014, Smith filed another Chapter 13 petition. This was also dismissed, in November 2016, because Smith failed to make required payments. A month later, on December 28, 2016, Smith filed the Chapter 13 bankruptcy petition underlying this appeal. Smith's last two cases, which were both pending in the same one-year period, cause § 362(c)(3)(A) to apply.

Smith's December 2016 petition identified two priority creditors -- the Internal Revenue Service and MRS. MRS has proven that Smith owed $51,596.53 in state taxes, interest, and penalties. Smith also identified numerous general unsecured creditors with claims, including for unpaid credit card and medical bills. In total, Smith said he owed almost $200,000.

The bankruptcy court eventually confirmed a plan in Smith's December 2016 Chapter 13 case, under which Smith must pay the trustee $800 per month for 60 months.

---

[1] "Chapter 13 of the Bankruptcy Code enables an individual to obtain a discharge of his debts if he pays his creditors a portion of his monthly income in accordance with a court-approved plan." Ransom v. FIA Card Servs., N.A., 562 U.S. 61, 64 (2011). This process allows consumer debtors with a regular income to "deal comprehensively with both unsecured and secured debts." 8 Collier on Bankruptcy ¶ 1300.01 (16th ed. 2018).

While this Chapter 13 plan was being considered, Smith and MRS disputed the scope of the automatic stay. Under § 362(a) of the Bankruptcy Code, Smith's December 2016 petition "operate[d] as a stay" of eight types of actions against Smith, Smith's property, and property of the bankruptcy estate. See 11 U.S.C. § 362(a). Neither Smith nor another "party in interest," like a creditor, had moved "for continuation of the automatic stay," as allowed under § 362(c)(3)(B). As a result, by January 27, 2017, thirty days after the filing of his December 2016 petition, some part of the stay had terminated under § 362(c)(3)(A), the provision we construe in this case.

At a hearing in the bankruptcy court in February 2017, MRS moved for an order under § 362(j) "confirming" the extent to which the automatic stay had terminated. Id. § 362(j). MRS argued that § 362(c)(3)(A) had terminated the automatic stay in full on January 27. Smith argued in opposition that § 362(c)(3)(A) -- specifically, the phrase "with respect to the debtor" -- meant that the stay terminated on January 27 only as to actions against the debtor and the debtor's property, not as to actions against the property of the bankruptcy estate.

At the hearing, MRS explained that it had not yet taken any action to collect estate property and that it sought clarification because it "d[id]n't want to take the position that the automatic stay is not applicable, then only to have a lawsuit

- 6 -

slapped on" if it later chose to do so. See id. § 362(k)(1) (allowing "an individual injured by any willful violation of a stay" to sue and "recover actual damages"). MRS explained at oral argument, for example, that it might later bring an action to collect estate property if Smith were to default on his plan payments.

The bankruptcy court ruled that the automatic stay had terminated in full, including as to property of the estate. Smith, 573 B.R. at 299. As mentioned, the district court affirmed. Smith, 590 B.R. at 19.

We directly examine the bankruptcy court's decision. See Irving Tanning Co. v. Kaplan, 876 F.3d 384, 389 (1st Cir. 2017). There are no disputes about the facts, so we proceed to reviewing the bankruptcy court's legal conclusion de novo. Id.

II.

We begin with a close look at the provision's text and the parties' textual arguments.

A.   Statutory Background

The filing of a petition to begin a bankruptcy case under Chapters 7, 11, or 13 "operates as a stay" of certain actions in three categories: against the debtor, the debtor's property, and property of the bankruptcy estate. 11 U.S.C. § 362(a). More specifically, the filing of a petition stays:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

Id. § 362(a).

The automatic stay is a "fundamental . . . protection[] provided by the bankruptcy laws." Midlantic Nat'l Bank v. New

Jersey Dep't of Envtl. Prot., 474 U.S. 494, 503 (1986) (quoting S. Rep. No. 95-989, at 54 (1978); H.R. Rep. No. 95-595, at 340 (1977)). It serves several goals of bankruptcy. It offers debtors "breathing room" during the period of financial reshuffling. Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997). The stay also protects the debtor's assets from "disorderly, piecemeal dismemberment . . . outside the bankruptcy proceedings." Mann v. Chase Manhattan Mortg. Corp., 316 F.3d 1, 3 (1st Cir. 2003). And it "enabl[es] 'the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings.'" SEC v. Miller, 808 F.3d 623, 630 (2d Cir. 2015) (quoting U.S. Lines v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n (In re U.S. Lines, Inc.), 197 F.3d 631, 640 (2d Cir. 1999)); see also Sunshine Dev., Inc. v. F.D.I.C., 33 F.3d 106, 114 (1st Cir. 1994) (same).

Congress, concerned about abuses of the automatic stay, altered the stay's applicability to repeat-filing debtors like Smith in BAPCPA. Before BAPCPA, the automatic stay "remain[ed] in force" for all filers until specific judicial action lifted or modified it, or until the end of the bankruptcy case. Soares, 107 F.3d at 975. BAPCPA added § 362(c)(3)(A), which states:

> (3) if a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a

- 9 -

> single or joint case of the debtor was pending within the preceding 1-year period but was dismissed . . .--
>
>> (A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case.

11 U.S.C. § 362(c)(3).

Since then, two competing interpretations of § 362(c)(3)(A) have emerged.[2] One view, advanced by Smith and sometimes called the majority view, reads the provision to terminate the stay as to actions against the debtor and the debtor's property but not as to actions against property of the bankruptcy estate. Another view, sometimes called the minority view, was adopted by the bankruptcy and district courts in this case, is advanced here by MRS, and reads the provision to terminate the whole stay.

---

[2] No circuit has yet weighed in, although a couple have passingly noted in dicta that, under § 362(c)(3)(A), "the automatic stay generally dissolves after 30 days." Tidewater Fin. Co. v. Williams, 498 F.3d 249, 259 (4th Cir. 2007); see also Adams v. Zarnel (In re Zarnel), 619 F.3d 156, 163 (2d Cir. 2010) (stating that the stay "terminates after thirty days").

District and bankruptcy courts are split. The First Circuit's bankruptcy appellate panel has twice endorsed Smith's view, see Witowski v. Knight (In re Witkowski), 523 B.R. 291, 297 (B.A.P. 1st Cir. 2014); Jumpp v. Chase Home Fin. LLC (In re Jumpp), 356 B.R. 789, 797 (B.A.P. 1st Cir. 2006), but both district courts in the circuit to have examined the question have concluded that § 362(c)(3)(A) ends the entire stay, see Smith, 590 B.R. at 3; St. Anne's Credit Union v. Ackell, 490 B.R. 141, 144-45 (D. Mass. 2013).

- 10 -

B.    The Parties' Textual Arguments

After a thorough evaluation of the parties' textual arguments, we conclude that the text of § 362(c)(3)(A) does not lend itself to one clear reading. We arrive at that conclusion in two steps.

First, we address Smith's plain meaning argument that the phrase "with respect to the debtor" unambiguously limits the scope of the stay's termination. Finding flaws in Smith's reasoning, we decide that this meaning is not plain. In the process, we also identify oddities, including redundancy, in § 362(c)(3)(A) which lead us to conclude that strict application of the canons of interpretation, including the rule against superfluities, would be unhelpful here.

Having concluded that, second, we entertain MRS's arguments. We doubt that the phrase "with respect to the debtor" clarifies that the provision does not apply to the debtor's spouse in a joint case. We are more sympathetic to MRS's argument that the phrase "with respect to the debtor" is superfluous, and that the operative language of § 362(c)(3)(A) terminates the entire stay. We find evidence that the phrase may be superfluous in other provisions of BAPCPA (without any ruling as to whether those other usages of the phrase are in fact superfluous). But we also notice a tension between the simplicity of MRS's reading and the complex verbiage of § 362(c)(3)(A).

- 11 -

Finding neither party's reading clear, in later sections, we proceed to evaluate the two possible readings in light of the statutory context and congressional intent.

1. Smith's Textual Argument

Smith argues that it is plain and unambiguous that "with respect to the debtor" signals that the stay terminates for actions against the debtor and the debtor's property but not for actions against the bankruptcy estate.[3] There is a flaw in Smith's reading. Further, as we discuss anon, the interpretive canons do not support his argument, nor do indicia of congressional intent.

a. "With Respect to the Debtor"

A primary obstacle to Smith's reading is that the phrase "with respect to the debtor" would most naturally be read to terminate the stay only for actions against the debtor, and not, as he reads it, for actions against both the debtor and the debtor's property. See, e.g., In re Daniel, 404 B.R. 318, 323 (Bank. N.D. Ill. 2009) (noting this anomaly); In re Bender, 562 B.R. 578, 583 (Bankr. E.D.N.Y. 2016) (same). Yet no court has read the provision that way. See Reswick v. Reswick (In re

---

[3] Other courts have agreed with Smith. See, e.g., Holcomb v. Holcomb (In re Holcomb), 380 B.R. 813, 815 (B.A.P. 10th Cir. 2008) ("[W]e see no ambiguity in the language of the statute."); Jumpp, 356 B.R. at 796; In re Jones, 339 B.R. 360, 363 (Bankr. E.D.N.C. 2006).

Reswick), 446 B.R. 362, 367-68 (B.A.P. 9th Cir. 2011) (observing this). Nor does Smith ask us to do so.

Recognizing that obstacle, Smith says that the phrase "property securing such debt" earlier in § 362(c)(3)(A) supplies the necessary reference to property of the debtor. See In re Jones, 339 B.R. 360, 365 (Bankr. E.D.N.C. 2006) (offering this same interpretation). But that phrase encompasses any "property securing . . . debt," whether property of the estate or property of the debtor. It does not support the distinction between estate property and debtor property on which Smith's reading depends.

The location of the phrase "property securing such debt" after "the stay under subsection (a)" and the combination of the phrase with "with respect to a debt" and "with respect to any lease" indicate that the clause summarizes the actions stayed in "subsection (a)." That subsection stays actions against both property of the debtor and property of the estate, so the phrase cannot establish that § 362(c)(3)(A) terminates the stay for actions against debtor property but not for actions against estate property. Indeed, it suggests the opposite.

Smith's two other attempts to find this distinction between debtor and estate property in § 362(c)(3)(A)'s text are unsuccessful. First, he stresses that the bankruptcy estate is a separate legal entity, see, e.g., 11 U.S.C. § 541 (defining bankruptcy estate), so that it would be unnatural to read "property

- 13 -

securing such debt . . . with respect to the debtor" in § 362(c)(3)(A) to include estate property.  But Smith's reading is the more unnatural one; it ignores the familiar legal distinction between a person and his or her property.  Just as creditors can proceed against a debtor or against a bankruptcy estate, creditors can proceed in rem against a debtor's property or in personam against a debtor.

Second, Smith asserts that "with respect to," like the term "'respecting' . . . generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject."  Lamar, Archer & Cofrin, LLP v. Appling, 138 S. Ct. 1752, 1760 (2018) (construing the term "statement respecting the debtor's financial condition" in 11 U.S.C. § 523(a)).  As a result, Smith says, "with respect to the debtor" should be read to encompass the debtor and his property.  But again the argument misfires: the bankruptcy estate is as much a "matter[] relating to th[e] subject" of the debtor as is the debtor's property.  Smith has no explanation for why the expander "with respect to" would not include estate property if it includes debtor property.

Finally, Smith also searches unsuccessfully for his distinction in other provisions of the Bankruptcy Code.  He emphasizes that § 362(a), which lays out the various actions covered by the automatic stay, distinguishes among acts "against

- 14 -

the debtor," see 11 U.S.C. § 362(a)(1), (2), (6), (7), (8), acts against "property of the debtor," see id. § 362(a)(5), and acts against "property of the estate," see id. § 362(a)(2), (3), (4). He infers from this differentiation in § 362(a) that Congress intentionally excluded a reference to "property of the estate" from § 362(c)(3)(A) in order to preserve the portion of the automatic stay covering actions against estate property. But Smith does not convince us that the subparagraph at issue, § 362(c)(3)(A), adopts § 362(a)'s precise framework. None of the "with respect to" phrases in § 362(c)(3)(A) mirror language in § 362(a). Section 362(c)(3)(A) references "property securing such debt," but not "property of the debtor" or "property of the estate." That the text of the provision at issue does not explicitly reference "property of the estate" does not signify that the provision leaves untouched the stay as to actions against estate property.

b.   Interpretive Canons

As we have just explained, the text does not render Smith's reading the most likely. Smith argues that even if his reading is not perfect, we should prefer it over MRS's because his is consistent with several canons of interpretation. We think not, and we conclude that strict application of the interpretive canons would be unhelpful here.

Smith refers to a handful of canons. First, he appeals to the plain meaning rule, which provides that courts must enforce a statute's language, however awkward, "at least where the disposition required by the text is not absurd." Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004) (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000)). As we have said, the language at issue could have different meanings.

To support his argument that estate property would be mentioned were it affected by the termination in § 362(c)(3)(A), Smith also relies on the logic of "[t]he maxim 'expressio unius est exclusio alterius' -- which translates roughly 'as the expression of one thing is the exclusion of other things.'" Smith, 590 B.R. at 11 (quoting United States v. Hernandez-Ferrer, 599 F.3d 63, 67 (1st Cir. 2010)). That logic, of course, would lead also to the conclusion that the stay is preserved as to actions against property of the debtor, as we have just explained.

He next relies on the maxim that "Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another." Id. (quoting Dep't of Homeland Sec. v. MacLean, 135 S. Ct. 913, 919 (2015)). We have also already rejected that logic for § 362.

Finally, Smith presses the rule against superfluities, which holds that we must "give effect, if possible, to every clause and word of a statute." Williams v. Taylor, 529 U.S. 362, 404

- 16 -

(2000) (quoting United States v. Menasche, 348 U.S. 528, 538-39 (1955)). Smith points out that effectuating the end of the entire stay would have required only the use of the words "the stay under subsection (a) shall terminate on the 30th day after the filing of the later case." MRS's reading, Smith notes, renders "with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease" and "with respect to the debtor" superfluous. The rule against superfluities, he says, means that we should prefer his reading, which gives effect to the phrase "with respect to the debtor." His reading, as we will detail, also ignores several of § 362(c)(3)(A)'s clauses.

The Supreme Court, most notably in King v. Burwell, has warned courts to be careful about "rigorous application of the canon[s]" where a provision may be "inartful[ly] drafted." King v. Burwell, 135 S. Ct. 2480, 2492 (2015) (discussing the rule against superfluities). This is because canons like those Smith cites assume that Congress has been able to choose each word and to craft each phrase with precision, and with technical rules like the canons in mind. So where it is apparent that a provision deviates from those assumptions about artful drafting, strict application of the canons "does not seem a particularly useful guide to a fair construction." Id. King must be followed here.

Section 362(c)(3)(A) is not an exemplar of precision, and that reality leads us to apply King's approach. The provision

is a collection of "with respect to" phrases, and it is not obvious how the phrases relate to each other, or how the phrases connect to other related provisions. Yet expressio unius and the preference for consistent readings assume that Congress has drafted using a uniform and stable set of categories and terms. This assumption does not hold for § 362.

Smith's reliance on the rule against superfluities is, not only for this reason, but also for another, misplaced. At oral argument, Smith conceded that his reading gives no force to the first three "with respect to" clauses. Similarly, MRS's reading does not give those clauses independent meaning. Given this, we think the preference against superfluities is of limited help in choosing between the parties' interpretations of § 362(c)(3)(A). See Ardente v. Standard Fire Ins. Co., 744 F.3d 815, 819 (1st Cir. 2014) (rejecting application of the rule against superfluities where "redundancies abound" (quoting TMW Enters., Inc. v. Fed. Ins. Co., 619 F.3d 574, 577–78 (6th Cir. 2010))).

2. MRS's Textual Arguments

a. "With Respect to the Debtor" in a Joint Case

We do not accept MRS's primary reading of the phrase "with respect to the debtor." That reading depends on the need to differentiate the debtor from the debtor's spouse. MRS argues that "with respect to the debtor" clarifies that the stay expires for a repeat-filing debtor but not for a debtor's non-repeat-

filing spouse in a joint case. See, e.g., Daniel, 404 B.R. at 326-27 (adopting this reading). This argument is based on the provision's terms; § 362(c)(3) starts by defining repeat debtors as those with either "single or joint case[s]." 11 U.S.C. § 362(c)(3).

We disagree that this introductory phrase requires clarification. Joint bankruptcy petitions are jointly administered but generally keep the rights of the two debtors separate. As a result, even without the addition of "with respect to the debtor," it would be clear that § 362(c)(3)(A) is inapplicable to the non-repeat-filing spouse. See id. § 302; 2 Collier on Bankruptcy ¶ 302.01-302.02.

Congress's failure to include similar clarifying language at § 362(c)(4)(A)(i) further undermines MRS's spousal reading. That provision reads:

> if a single or joint case is filed by or against a debtor who is an individual under this title, and if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed, . . . the stay under subsection (a) shall not go into effect upon the filing of the later case.

11 U.S.C. § 362(c)(4)(A)(i).

b.   Superfluity Argument

MRS next, and more plausibly, argues that the phrase "with respect to the debtor" in § 362(c)(3)(A) is an example of the imprecision and redundancy we have identified, and is not, as

- 19 -

Smith contends, the key to reading § 362(c)(3)(A).  To support its argument that the phrase is superfluous, in the sense of providing inessential or no additional meaning, MRS cites a survey finding that all ten "stand-alone"[4] uses of the phrase "with respect to the debtor" or "a debtor" in the Bankruptcy Code were added in BAPCPA and that all could be read as "filler."  Peter E. Meltzer, Won't You Stay a Little Longer? Rejecting the Majority Interpretation of Bankruptcy Code § 362(c)(3)(A), 86 Am. Bankr. L.J. 407, 430-31 (2012).

Our consideration is limited to the section of the Bankruptcy Code at issue here, and we do not construe the other provisions of BAPCPA cited in the survey.  Suffice it to say, however, that the examples discussed there indicate that Congress may have used the phrase "with respect to a" or "the debtor" in BAPCPA to reemphasize that a provision applied to the debtor rather than to add new information about the meaning or scope of a provision.  In light of this pattern across BAPCPA, we agree with MRS that it would be odd for Congress to have chosen "with respect to the debtor" to articulate an important reform, one placing a highly consequential limit on termination of the automatic stay.

---

    [4]    There are uses of the phrase that could not stand alone because they contain a qualifying clause.  See, e.g., 11 U.S.C. § 704(b)(1) ("With respect to a debtor who is an individual in a case under this chapter . . . .")

- 20 -

On the other hand, like Smith's reading, MRS's reading of § 362(c)(3)(A)'s language is not obvious. MRS's interpretation -- that the whole stay terminates -- is simple. Section 362(c)(3)(A)'s prolix "with respect to" clauses seem in tension with this straightforward result. We have already rejected strict application of the rule against superfluities, but we do find relevant the principle behind that rule -- Congress generally uses words to some effect. That common sense principle underscores the tension between MRS's interpretation and § 362(c)(3)(A)'s language.

### III.

For the reasons discussed, the text of § 362(c)(3)(A), including the phrase "with respect to the debtor," does not on its own obviously support or obviously foreclose either party's reading. So we turn to statutory context and congressional purpose for further evidence.

A. <u>Context</u>

MRS says that its reading is a better fit than Smith's with related sections of the automatic stay provision, while Smith argues that MRS's reading is in direct conflict with paragraph § 362(c)(1). We resolve each of these arguments in favor of MRS's reading.

1.    The Automatic Stay's Operation for Other Filers

The automatic stay operates differently for first-time, second-time, and subsequent filers.  For first-time filers, the stay is automatic and permanent, at least until the bankruptcy case closes or a court acts to modify the stay.  See 11 U.S.C. §§ 362(a)(1)-(2); id. § 362(d).  And when a debtor has pending in one year three or more petitions for bankruptcy, § 362(c)(4) provides that "the stay under subsection (a) shall not go into effect upon the filing of the [third or subsequent] case."  Id. § 362(c)(4).  Section 362(c) seems to establish a system of progressive protections, so protections for second-time filers should fall, as the bankruptcy court put it, "[i]n the middle." In re Smith, 573 B.R. at 305.

We conclude that the most sensible middle ground, and the one most likely intended by Congress, is found under MRS's reading, under which second-time filers get the benefit of the stay, but only temporarily (albeit with a procedure to seek the stay's continuation).  To be sure, protections for second-time filers under Smith's construction also fall somewhere in the middle.  However, after a careful evaluation of Smith's and amici's arguments about results, we deem the middle ground under Smith's reading to be the less plausible.

First, we turn to amici's argument that termination of the stay as to actions against the debtor alone does have an

- 22 -

intangible benefit to creditors and detriment to debtors in that it allows creditors to make collection calls. Although frequent or aggressive calls from collectors may be exasperating for debtors, cf. Midland Funding, LLC v. Johnson, 137 S.Ct. 1407, 1416 (2017) (Sotomayor, J., dissenting) (documenting an aggressive collection strategy), even amici ultimately acknowledge that creditor contact is not a "tangible detriment" to debtors.

Second, Smith and amici argue that, under their reading, tangible consequences flow from the termination of the stay as to actions against debtor property. Creditors, they emphasize, would be free to pursue a category of the debtor's property called exempt property.[5] A look at the purpose of exempt property and at the law governing it shows why we think Congress, in reforming the automatic stay, would not have been moved by this consequence. The bankruptcy law, apart from the automatic stay, already provides significant protection to exempt property.

The vast majority of the debtor's property becomes estate property on the filing of a bankruptcy petition. See 11 U.S.C. § 541(a); see also Taylor v. Freeland & Kronz, 503 U.S. 638, 642 (1992) ("When a debtor files a bankruptcy petition, all

---

[5] Property of the debtor also includes abandoned property and property that does not pass to the estate. See In re Jupiter, 344 B.R. 754, 757 (Bankr. D.S.C. 2006). But neither Smith nor amici argue that lifting the stay as to abandoned property or property that does not pass to the estate is consequential.

of his property becomes property of a bankruptcy estate." (citing 11 U.S.C. § 541)). Little property remains property of the debtor because, as a leading commentator explains, "In order to achieve the[] goals [of bankruptcy], it is necessary and desirable that the property included in the bankruptcy estate be as inclusive as possible." 5 Collier on Bankruptcy ¶ 541.01 (16th ed. 2018). Debtors are paid from estate property and a financial fresh start is easier if property is consolidated in the estate. See id. In the Chapter 13 context, the definition of the property which becomes estate property is particularly broad, including most property and wages that the debtor acquires pre-petition and post-filing. See 11 U.S.C. § 1306; see also In re Jupiter, 344 B.R. 754, 760 (Bankr. D.S.C. 2006) ("In a chapter 13 setting, property of the estate encompasses nearly all of a debtor's valuable assets pursuant to § 1306.").

The Bankruptcy Code does allow debtors to claim certain types of property as exempt from the bankruptcy estate. See 11 U.S.C. § 522. These exemptions facilitate the debtor's financial fresh start by "let[ting] the debtor maintain an appropriate standard of living as he or she goes forward after the bankruptcy case." 4 Collier on Bankruptcy ¶ 522.01 (16th ed. 2018). Consistent with this purpose, categories of property that are helpful to a debtor in day-to-day living are exemptible. For

example, values in a car, furniture, clothing, and benefits like pensions tend to be exemptible.[6]  See, e.g., 11 U.S.C. § 522(d).

Significantly, in part because exempt property is designed to help the debtor with basic expenses, bankruptcy law strictly limits creditors' ability to pursue this property.  Under § 522(c), with limited exceptions, "property exempted . . . is not liable during or after the case for any [pre-petition] debt of the debtor."  Id. § 522(c).[7]  That is, "[t]his exempt property may never be reached to satisfy a prepetition debt . . . ."  4 Collier on Bankruptcy ¶ 522.01 (16th ed. 2018).  Exempt property cannot generally be reached by creditors regardless of the automatic stay or of its termination.

Smith and amici do not address this general rule, focusing instead on specific exceptions.  They ultimately identify four consequences of lifting the automatic stay as to actions against debtors and their property: (1) certain governmental creditors can collect tax refunds for non-tax debts, (2) certain

---

[6]    These categories of exemptible property are illustrative.  4 Collier on Bankruptcy ¶ 522.01 (16th ed. 2018). States can opt debtors out of the federal exemptions and into state-specific exemptions, so state law sometimes governs what is exemptible.  Id.

[7]    To the extent that state law governs in some cases, states have similar restrictions.  See Jupiter, 344 B.R. at 762 n.11 (noting that "state law prohibits a creditor from satisfying any judgment it obtains against" exempt property).  Maine's list of property that cannot be attached or executed is found at Me. Rev. Stat. Ann. tit. 14 § 4422.

governmental creditors can pursue exempt property to satisfy non-dischargeable tax debts, (3) certain governmental creditors can suspend a debtor's driver's license, and (4) creditors can make collection calls.

Smith's and amici's proposed result makes less sense to us than does MRS's. Had Congress wanted § 362(c)(3)(A) to terminate the stay as to these four specific actions, it likely would have enumerated those actions rather than signifying them with the nebulous "with respect to the debtor." Further, Smith and amici "do[] not explain why Congress would" choose to allow these particular actions against second-time filers after thirty days but not others. Appling, 138 S. Ct. at 1761. We doubt that Congress would have "draw[n] such seemingly arbitrary distinctions" between second-time and other repeat filers. Id. In the end, MRS's view that § 362(c)(3)(A) terminates the automatic stay in full after thirty days fits better with the operation of the stay for all types of filers.

2. Extension of the Automatic Stay for Second-Time Filers

MRS next argues that its reading fits better with the provisions governing extensions of the automatic stay for second-time filers. As stated, § 362(c)(3)(B) allows the bankruptcy court to extend the temporary automatic stay before it expires at the request of a debtor or a creditor and on a showing of good faith as to the creditors being stayed. 11 U.S.C. § 362(c)(3)(B). For

purposes of the extension, "a case is presumptively filed not in good faith" for several categories of filers, including filers like Smith whose previous case was dismissed for failure to "perform the terms of a plan confirmed by the court." Id. § 362(c)(3)(C). However, that "presumption may be rebutted by clear and convincing evidence." Id.

Under Smith's reading, this scheme makes less sense than it does under MRS's, for at least two reasons. First, it is hard to imagine that Congress would develop a process for extensions, and lay it out in such detail, if extensions would be needed only in the event that one of the four consequences Smith and amici identify were threatened. Second, rather than allowing only a debtor to move for an extension, Congress allowed any "party in interest," including a creditor, to move to extend the stay. Id. § 362(c)(3)(B); see also id. § 1109(b). Most likely, Congress anticipated that a creditor might move to extend the stay to prevent another creditor from reaching, and draining, estate property in a separate action during the bankruptcy process. That situation would arise only under MRS's reading.

Smith and amici do acknowledge that Congress was concerned with creditor actions against estate property outside of the bankruptcy process. They argue that § 362(c)(3)(B) extensions would be inadequate to protect estate property, however, and that as a result § 362(c)(3)(A) must be read to preserve the stay as to

estate property. Smith and amici emphasize that a debtor's creditors will be paid from estate property, so that its protection from piecemeal distribution is essential to the success of an individual bankruptcy case, and to advancing the broader purposes of bankruptcy. See, e.g., 5 Collier on Bankruptcy ¶ 541.01 (16th ed. 2018) (explaining how the estate and the stay work in tandem to achieve certain purposes of bankruptcy).

When read alongside § 362(c)(3)(B)'s extension process, MRS's interpretation of § 362(c)(3)(A) is consistent with these goals of bankruptcy. A second-time filer with a meritorious bankruptcy case, or a creditor whose self-interest dictates it, may get an extension of the stay on "demonstrat[ing] that the filing of the later case is in good faith as to the creditors to be stayed." 11 U.S.C. § 362(c)(3)(B). Notably, courts must act quickly on these requests; Congress provided that any hearing on a request for an extension must be "completed before the expiration of the 30-day period." Id. Section 362(c)(3)(B) reflects an attempt by Congress to ensure that certain second-time filers who meet an enhanced burden have an escape route from the termination of the entire automatic stay, including as to actions against estate property.

3. Smith's Conflict Argument

Finally, Smith argues that MRS's reading of § 362(c)(3)(A) would conflict with § 362(c)(1), which states, "the

- 28 -

stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate."  Id. § 362(c)(1).

Smith misreads the provision.  As he sees it, this is a mandate that the automatic stay remain in effect indefinitely for estate property.  Not so.  Properly read, the provision is narrower, and more technical.  It works with § 362(c)(2) to define precisely the timing of the dissolution of the stay for different types of actions.  Specifically, under § 362(c)(1), the stay "continues until [estate] property is no longer property of the estate."  Id. § 362(c)(1).  And under § 362(c)(2), "the stay of any other act under subsection (a) continues until . . . the time the case is closed" or "the time the case is dismissed" or a "discharge is granted or denied."  Id. § 362(c)(2); see also Bigelow v. Comm'r, 65 F.3d 127, 129 (9th Cir. 1995) (summarizing the provision's operation).  These instructions are applicable only as long as the stay has not otherwise lifted under § 362(c)(3)(A), or some other provision.  MRS's reading creates no conflict with § 362(c)(1).

B.    Congressional Intent

Having concluded that MRS's reading is a better fit with the statutory context, we turn to congressional intent.  Smith argues that looking at legislative purpose and history is inappropriate because the language of the statute is plain.  As

explained, we disagree that the statute's words are so clear. And we do not think that legislative purpose and history should be disregarded in interpreting § 362(c)(3)(A). The Supreme Court often consults legislative history in bankruptcy decisions to ensure that its interpretations are consistent with Congress's purposes. See, e.g., Appling, 138 S. Ct. at 1763-64; Ransom v. FIA Card Servs., N.A., 562 U.S. 61, 71 (2011); Milavetz, Gallop & Milavetz, P.A. v. United States, 559 U.S. 229, 236 n.3 (2010). Our analysis of that history shows that MRS's reading better reflects Congress's intent in enacting BAPCPA and § 362(c)(3)(A) in particular.

BAPCPA aimed "to correct perceived abuses of the bankruptcy system." Milavetz, 559 U.S. at 231-32. Milavetz, for example, interpreted BAPCPA's bar on debt relief agencies "advis[ing]" clients "to incur more debt in contemplation of such person filing a" bankruptcy case. 11 U.S.C. § 526(a)(4). In light of BAPCPA's purpose, as well as other evidence, Milavetz construed this language as a bar only on advice "in contemplation of" an abusive filing. That is, the provision "prohibits a debt relief agency only from advising a debtor to incur more debt because the debtor is filing for bankruptcy, rather than for a valid purpose." Milavetz, 559 U.S. at 243. We turn to BAPCPA's legislative history to build on Milavetz's basic instruction about Congress's intent.

- 30 -

At "[t]he heart of [BAPCPA's] consumer bankruptcy reforms," the House Judiciary Committee report accompanying BAPCPA said, were "provisions intended to deter serial and abusive bankruptcy filings." H.R. Rep. No. 109-31(I), at 2 (2005);[8] see also Sara Sternberg Greene, The Failed Reform: Congressional Crackdown on Repeat Chapter 13 Bankruptcy Filers, 89 Am. Bankr. L.J. 241, 242 (2015). Among these reforms was § 362(c)(3)(A). Congress described that provision as an "amend[ment to] section 362(c) of the Bankruptcy Code to terminate the automatic stay within 30 days in a chapter 7, 11, or 13 case filed by or against an individual if such individual was a debtor in a previously dismissed case pending within the preceding one-year period." H.R. Rep. No. 109-31(I), at 69 (2005). Notably, this description reflects MRS's, but not Smith's, interpretation.

The provision was designed to "Discourag[e] Bankruptcy Abuse," and in particular, to "Discourag[e] Bad Faith Repeat Filings" -- that is, filing for the benefit of triggering the automatic stay, rather than for some valid reason. Id. This purpose is best achieved by interpreting § 362(c)(3)(A) to

_____

    8    The Supreme Court relied on this House Judiciary Committee Report in Ransom v. FIA Card Servs., N.A. to determine that "Congress designed the means test," the formula at issue in Ransom, "to measure debtors' disposable income and, in that way, 'to ensure that [they] repay creditors the maximum they can afford.'" Ransom, 562 U.S. at 71 (quoting H.R. Rep. No. 109-31(I), at 2 (2005)). "[C]onsideration of [this] purpose strengthen[ed]" the Court's reading of the term at issue. Id.

terminate the entire stay, including as to estate property.  The portion of the stay that is most valuable to a bankruptcy petitioner, just as to a creditor, is the portion that protects estate property.

Further evidence for the conclusion that the legislative purpose and history support MRS's reading comes from BAPCPA's precursor legislation.  In 1998, Congress attempted reform of the Bankruptcy Code, including an amendment that was "essentially identical" to § 362(c)(3)(A).  Reswick, 446 B.R. at 372; see also id. at 371 n.8, 372 n.9 (quoting the House and Senate versions of the earlier amendment).  Even though that legislation was vetoed, see S. Rep. 107-19, at 88 (2001), we look to its purposes, given the uniformity of its language with the language of the provision at issue.

Congress drafted the earlier legislation based in part on a report by the National Bankruptcy Review Commission that highlighted the problem of debtors

> fil[ing] for chapter 13 . . . on the eve of a
> foreclosure or eviction for the sole purpose
> of delaying the state legal process. When the
> threat passes, they dismiss their cases, only
> to file again when the mortgagee or landlord
> brings another legal action to seize control
> of the property.

Nat'l Bankr. Review Comm'n, Report of the National Bankruptcy Review Commission, § 1.5.5, 278-79 (Oct. 20, 1997) (footnote omitted).

This concern -- abuse of the automatic stay, especially in Chapter 13 cases -- animated the precursor to § 362(c)(3)(A). In 1998, Congress explained that the amendment aimed to "reduce abuses of the bankruptcy system by reducing the incentive to file for bankruptcy repeatedly without completing the bankruptcy process." S. Rep. No. 105-253, at 39 (1998). As the 1998 House report described, echoing the Commission, "Some debtors file successive bankruptcy cases to prevent secured creditors from foreclosing on their collateral. [The change to the automatic stay] remedies this problem by terminating the automatic stay in cases filed by an individual debtor . . . if his or her prior case was dismissed within the preceding year." H.R. Rep. No. 105-540, at 80 (1998).

Significantly for present purposes, the proposed 1998 amendment was substantially identical to § 362(c)(3)(A). However, the 1998 version was to apply not only to second-time but also to third-time and subsequent filers, see S. Rep. 105-253, at 39 (1998), and that alone makes Smith's reading unlikely. The authors of the 1998 bill, aiming to deter and discipline even the most egregious abuses, would probably not have designed a provision with the limited effects of Smith's reading. More likely, and consistent with MRS's reading of the language, the 1998 Congress intended to terminate the automatic stay after thirty days for all repeat filers. Then, in BAPCPA, the 2005 Congress did two things.

- 33 -

First, it added § 362(c)(4) stating that the stay does not enter for the worst abusers, third-time and subsequent filers. Second, for second-time filers, Congress simply imported the language from the 1998 proposal into § 362(c)(3)(A). If Congress had intended to change the 1998 language's meaning or scope, we would expect that shift to be reflected in the BAPCPA House Report, or elsewhere in BAPCPA's legislative history. Instead, as mentioned, the 2005 Congress described § 362(c)(3)(A) as "terminat[ing] the automatic stay within 30 days." H.R. Rep. No. 109-31(I), at 69 (2005).

IV.

Based on the provision's text, the statutory context, and Congress's intent in enacting BAPCPA, we hold that § 362(c)(3)(A) terminates the entire automatic stay -- as to actions against the debtor, the debtor's property, and property of the bankruptcy estate -- after thirty days for second-time filers.

We affirm the order of the bankruptcy court. Costs are awarded to MRS.